Mary P. Smith, Individually and as Administratrix of the Estate of Frank Smith, Plaintiff *v.* Commonwealth of Pennsylvania, Walter Baran, in his official capacity as Secretary of General Services, The Department of General Services et al., Defendants.

Argued September 11, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MACPHAIL, BARRY and COLINS.

*John D. Blumenthal,* for plaintiff.

*James J. Kutz,* Deputy Attorney General, with him, *Allen C. Warshaw,* Senior Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for defendants.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., February 26, 1985:

Mary P. Smith and the Commonwealth cross motion for summary judgment. We deny Smith's motion and grant the Commonwealth's motion.

Frank Smith, a field representative, was employed by the Pennsylvania Human Relations Commission from December 17, 1970, until his death on April 30, 1982, at the age of sixty-nine.[1] On June 11, 1977,

---

[1] Upon being hired, Smith executed a beneficiary designation form which named Mary Smith as beneficiary.

Smith turned sixty-five and his state employee life insurance coverage was reduced by 50%.

In 1969, the Commonwealth entered into a term life insurance contract for its employees with the Life Insurance Company of North America (LINA). The Commonwealth provides group life insurance coverage for its permanent employees under the State Employees Group Life Insurance Act which sets forth a life insurance benefit schedule based on a Commonwealth employee's annual gross compensation.[2] However, the Act also provides that:

---

[2] Section 2 of the State Employees Group Life Insurance Law, Act of September 26, 1961, P.L. 1661, *as amended*, 71 P.S. §780.2, provides:

§780.2. Amount of Insurance

The amount of such life insurance for any insured employe shall be based on the employe's yearly gross compensation from the State in accordance with the following schedule:

Schedule of Group Life Insurance

| Class | Yearly Gross Compensation | Amount of Life Insurance |
|---|---|---|
| 1 | less than $2500 | $ 2500 |
| 2 | $2500 and less than 3500 | 3000 |
| 3 | 3500 and less than 4500 | 4000 |
| 4 | 4500 and less than 5500 | 5000 |
| 5 | 5500 and less than 6500 | 6000 |
| 6 | 6500 and less than 7500 | 7000 |
| 7 | 7500 and less than 8500 | 8000 |
| 8 | 8500 and less than 9500 | 9000 |
| 9 | 9500 and less than 10500 | 10000 |
| 10 | 10500 and less than 11500 | 11000 |
| 11 | 11500 and less than 12500 | 12000 |
| 12 | 12500 and less than 13500 | 13000 |
| 13 | 13500 and less than 14500 | 14000 |
| 14 | 14500 and less than 15500 | 15000 |
| 15 | 15500 and less than 16500 | 16000 |
| 16 | 16500 and less than 17500 | 17000 |
| 17 | 17500 and less than 18500 | 18000 |
| 18 | 18500 and less than 19500 | 19000 |
| 19 | 19500 and over | 20000 |

The amount of such life insurance for any insured employee sixty-five years of age or older shall be one-half the amount of life insurance provided under the above schedule.

71 Pa. C. S. §780.2. This provision was in effect when Frank Smith was hired.

On September 21, 1979, in response to the Federal Age Discrimination in Employment Act (ADEA),[3] the Secretary of Budget and Administration order LINA to revise the benefits for employees between ages 65-69.[4] As a result, the employees in this group were entitled to 65% of the full coverage rather than 50%. The policy and statute were subsequently amended to reflect this revision.

Upon Frank Smith's death on April 30, 1982, at the age of sixty-nine, the Commonwealth paid his widow, Mary Smith, $13,000.00, representing 65% of the $20,000.00 maximum benefit. Mrs. Smith argues that she is entitled to the balance of $7,000.00.[5]

The issue in this case is whether the State Employees Group Life Insurance Act violates the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 26

---

[3] 29 U.S.C. §631.

[4] LINA offered the Commonwealth two options to bring the group policy in compliance with the ADEA. The first option was to reduce life insurance benefits by 35% at age sixty-five based strictly on the table of Group Life Insurance Rates comparing the average rates of those employees aged 65-69 with those aged 60-64. The second option was based on an analysis of actual paid claims for those age brackets. The first option was selected.

[5] The Commonwealth contends that Smith's request for money damages is barred by the sovereign immunity doctrine, 42 Pa. C.S.A. §8521. This argument has no merit because Smith is challenging the constitutionality of a Commonwealth statute. This Act is inapplicable because there is not a case involving the Commonwealth's negligence.

of the Pennsylvania Constitution.[6] Smith contends that the statutory provision which reduces life insurance benefits for insured employees sixty-five years of age or older is unconstitutional in that there is no rational basis for subjecting only those individuals sixty-five years of age or older to the benefit reduction.

Age classification statutes must rationally further a legitimate state purpose. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307 (1976). The Commonwealth contends that its compliance with the ADEA and its actuarial research provide the rational basis for the reduced life insurance coverage for employees between ages 65-69. The Commonwealth refers to the Labor Department's guideline, promulgated in accordance with the ADEA, which provides that fringe benefits could be reduced for older employees to the extent those reductions were justified by increased costs. 29 C.F.R. §860.120.

Although the federal regulations relied upon were promulgated on May 25, 1979, more than ten years after the enactment of the 1968 amendment to the Commonwealth Group Life Insurance Statute which reduced benefits to those aged sixty-five and over, these regulations reinforce the justification for the Commonwealth's age classification.[7]

The Commonwealth further contends that the cost of insuring employees increases with the employee's age and this justifies the discriminatory treatment. After conducting its own detailed analysis, the Com-

---

[6] In this case, the equal protection analysis under the Pennsylvania Constitution parallels the analysis under the Federal Constitution.

[7] Although the parties never raised the applicability of the Pennsylvania Human Relations Act, this Act guides us on how employee group life insurance should be handled in age discrimination cases. Section 5 of The Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §955:

monwealth and LINA concluded that the required cost to insure individuals between the ages of 65-69 was in excess of 45% more than the Commonwealth's cost of insuring employees between ages 60-64. However, the Commonwealth arrived at 35% because insurance industry group life monthly calculation rates, which are based on mortality rates, provide for an approximate 35% increase in rates for the 65-69 age group. The Commonwealth argues this amount is actually less than that authorized by the ADEA. The Department of Labor regulations provide:

It is not uncommon for life insurance coverage to remain constant until a specified age, frequently 65, and then be reduced. This practice will not violate the Act (even if reductions start before age 65), provided that *the reduction for an employee of a particular age is no greater than is justified by the increased cost of coverage for that employee's specific age bracket* encompassing no more than five years. . . . (Emphasis added.)

29 C.F.R. §860.120(i).

The Commonwealth also argues that a review of LINA's paid claims data indicates that the Commonwealth would have been justified in not raising the amount of coverage from 50% to 65% for employees age sixty-five and older. It notes that during 1969-1974 the cost of insuring employees between ages 60-64 was 52.9% of the cost of insuring employees between ages 65-69. During 1975-1979 the cost of insur-

It shall be an unlawful discriminatory practice . . .
   (a) For any employer because of . . . age . . . to otherwise discriminate against such individual with respect to . . . terms, conditions or privileges of employment. . . . The provision of this paragraph shall not apply, to . . . (3) operation of the terms or conditions of any bona fide group or employe insurance plan. . . .

ing employees between 60-64 was only 50.9% of the cost of insuring employees between ages 65-69.[8]

Smith opposes the five-year age cost comparison method, noting that the Commonwealth's cost of providing an employee $1,000.00 of insurance at age sixty-four is $3.71, while the cost at age sixty-five is $4.04. This represents an increase in cost of only 8.9%. Smith contends that the Commonwealth's five-year paid claims comparison may be performed in any five-year age bracket and the percentage change would be significant.[9] However, the ADEA guidelines authorize the use of the five-year age cost comparison methodology. 29 C.F.R. §860.120(d)(3).

We hold that the State Employees Group Life Insurance Act rationally furthers a legitimate state purpose.[10] Therefore, we deny Smith's motion for summary judgment and grant the Commonwealth's motion for summary judgment.

## ORDER

Mary P. Smith's motion for summary judgment is denied. The Commonwealth of Pennsylvania's motion for summary judgment is granted.

---

[8] The Commonwealth also adds that the availability of a state pension or social security at age sixty-five justifies a reduction in insurance coverage. Also, the need for insurance coverage to provide for minor children would be greater at younger employee ages. However, the record reveals nothing that indicates the legislature considered these factors when it promulgated this statute.

[9] Smith states that LINA's Group Life Monthly Calculation Form reveals an almost constant increase in cost from year to year after the age of thirty-five; and after the age of forty-three, the increases vary only by 3%.

[10] The Commonwealth individual defendants were joined in Smith's Amended Complaint under a 42 U.S.C. §1983 action. However, Smith concedes in her brief that these individuals are immune because they exercised good faith and she agrees that they should be dismissed from the lawsuit.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.

Judge ROGERS did not participate in the decision in this case.